15341

PASLAY v. BROOKS, COUNTY SUPERINTENDENT OF EDUCATION, *ET AL.*

(17 S. E. (2d), 865)

346

*Mr. H. K. Osborne* and *Mr. Thomas B. Butler,* County Attorneys, for appellant J. F. Brooks, Superintendent of Education for Spartanburg County.

*Mr. J. Davis Kerr,* of Spartanburg, for appellants Ralph C. Powell and E. E. Hawkins,

*Mr. Donald Russell* and *Mr. Rufus M. Ward,* both of Spartanburg, for respondent,

*Mr. Kerr,* in reply brief of appellants Ralph C. Powell and E. E. Hawkins,

December 13, 1941.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE FISHBURNE.

This was a mandamus proceeding against J. F. Brooks, as County Superintendent of Education for Spartanburg County, to require and compel him to approve a warrant drawn by the trustees of Saxon School District, No. 70, in favor of the petitioner, R. B. Paslay, in the sum of $400.00. The warrant was issued on July 5, 1939, by J. C. Easler, E. E. Holmes, and W. C. Trammell, as trustees, and is alleged to cover professional services and fees for representation

and advice in various legal proceedings on behalf of the school district.

The action as originally brought was against the County Superintendent of Education alone, but later Ralph C. Powell and E. E. Hawkins, qualified electors and taxpayers of Saxon School District, were permitted to intervene and file their answer and return to the rule to show cause which had been issued. The County Superintendent and the intervenors defended upon the grounds: First, that there were no funds in the hands of the county treasurer of Spartanburg County with which to pay the warrant in question; that such item was not included in the school budget for the year, 1939; and, second, that no funds were allocated to its payment. A further defense was that the professional services performed by the petitioner, and for which the warrant was issued, were solely on behalf of Messrs. Easler, Holmes and Trammell as individuals and in behalf of their candidacy for re-election as trustees of Saxon School District; that in issuing the warrant the said trustees acted wholly without authority of law and *ultra vires.*

The cause was referred by the Circuit Court to the Master in equity for Spartanburg County, who recommended that payment should be made and that the writ of mandamus should issue. The lower Court in affirming the Master's report, held that the duty of the county superintendent in acting upon the school warrant issued by the trustees of Saxon School District was merely ministerial, and ordered him to forthwith approve the warrant. From this judgment the defendants appeal.

Much of the history of the various legal steps and the litigation upon which the petitioner's claim is based is set forth in detail in the cases of *Hawkins v. Carroll,* 190 S. C., 11, 1 S. E. (2d), 898, 126 A. L. R., 1028, and *Corn v. Blackwell,* 191 S. C., 183, 4 S. E. (2d), 254.

In the first case mentioned, that of *Hawkins v. Carroll,* this Court passed upon the regularity and validity of certain petitions filed by the qualified electors and resident free-

holders of Saxon School District with the County Board of Registration for Spartanburg County, wherein the board was requested to notify the trustees of Saxon School District to call an election for school trustees of that district. It appears from the record that the board of registration, after a hearing in which the proponents and the opponents of the election were heard, decided that the petition filed with the board met with the requirements of the law, and the board thereupon, as the law required, ordered the trustees of Saxon School District to hold the election. In the hearing before the registration board, Mr. Paslay represented the proponents. When the case reached the Supreme Court upon *certiorari* proceedings, the petitioner represented those who favored the holding of an election and who desired the decision of the board of registration to be upheld.

Neither at the hearing held by the board of registration nor in the case brought to this Court as a result of that hearing did the school trustees of Saxon School District in their official capacity have any interest. The question at issue was purely between those who contested the regularity and the legal sufficiency of the petitions, filed with the board of registration on the one hand, and, on the other hand, those who upheld the validity of the petitions. It is true that in *Hawkins v. Carroll, supra,* the trustees of the school district were directed to plead to the writ of *certiorari* in this Court, and a return was made for them by Mr. Paslay, but the school district was in no sense an essential party to that proceeding, nor was any relief prayed for against it.

Following the decision in *Hawkins v. Carroll, supra,* an election was held on March 24, 1939, for school trustees in Saxon School District in which Messrs. Easler, Holmes and Trammell were candidates to succeed themselves. They were opposed by three other residents of the district, who were aspirants for the same office. A majority of the votes cast at this election was for Easler, Holmes and Trammell. Their election was contested before the County Board of Canvassers of Spartanburg County upon the ground, among others,

that the secrecy of the ballot was violated, and it was contended that the election was invalid for that reason. At the hearing before the county board of canvassers the petitioner, Mr. Paslay, appeared as attorney for Easler, Holmes and Trammell, and took the position that the election was valid, and that his clients should be declared duly elected. The board, after hearing argument, declared the election void.

An appeal was taken to the State Board of Canvassers by Mr. Paslay, on behalf of Easler, Holmes and Trammell which resulted in a decision reversing the action of the county board and declaring them duly elected trustees of Saxon School District. The contested questions were then brought to this Court upon a writ of *certiorari,* in the case of *Corn v. Blackwell, supra,* and in the writ it was provided that "the respondents, J. C. Easler, E. E. Holmes and W. C. Trammell, may make such return or other pleadings to this return as they may be advised." It will be noted that they were made parties solely as individuals who sought to establish their title to office as a result of the election to which we have referred. Mr. Paslay filed the return in their behalf and represented their interests in this Court. The Supreme Court in its decision reversed the order of the State Board of Canvassers declaring J. C. Easler, E. E. Holmes and W. C. Trammell duly elected trustees of Saxon School District and held the election to be null and void.

Subsequent to the filing of the opinion in *Corn v. Blackwell, supra,* a valid election was held in Saxon School District in which Messrs. Easler, Holmes and Trammell were duly elected trustees. And it is the warrant which they issued to Mr. Paslay for $400.00, dated July 5, 1939, which is now under attack.

It is conceded that the petitioner has not been compensated for his professional services by Saxon School District or by Easler, Holmes and Trammell, as trustees or as individuals. But he has been paid the sum of $400.00 by other persons resident in the school district whose interests and

sympathies were allied with the side he represented in the various phases of the litigation.

In addition to the general advice which Mr. Paslay gave to Easler, Holmes and Trammell, most of which had direct reference to the contested matters to which we have referred, it is claimed that a part of the fee covered by the $400.00 warrant was for services rendered in certain litigation to which we have not yet adverted, but which we now mention.

By the Act of 1938 (Act No. 872, 40 St. at Large, page 1775), it was provided that if no election were held, the County Board of Education should make appointment of trustees. Pending the decision of the Board of State Canvassers with reference to the regularity of the school election on March 24, 1939, the county board of education appointed three persons as trustees for Saxon School District. Immediately after the Board of State Canvassers rendered its decision reversing the county board of canvassers, Mr. Paslay, representing Easler, Holmes and Trammell, styling them as the duly elected trustees in the election heretofore referred to, obtained an *ex parte* order from Judge Sease on circuit, restraining the newly appointed trustees from acting.

We first consider the branch of the inquiry which has to do with whether the action of Messrs. Easler, Holmes and Trammell was *ultra vires* in issuing the $400.00 warrant to Mr. Paslay. The question of law involved is the power of the board of trustees to employ counsel under the circumstances above narrated and to have such amount charged against the funds of the school district.

Saxon School District, No. 70, is constituted under the law a body politic and corporate, and in that name it may sue and be sued, and is capable to contract and be contracted with to the extent of its school fund. Section 5350, 1932 Code. The capacity to sue and be sued carries with it all powers that are ordinarily incident to the prosecution or defense of an action at law or a suit in equity, including the power to employ counsel. But a school district

having the capacity to sue and be sued, and the authority to contract, has no right to exercise the power of employing counsel except in matters relating to its corporate rights or functions. It necessarily follows that a school district is without power to employ counsel and to pay his compensation out of public funds in matters not involving the interests of the schools of the district. 56 C. J., Sec. 929, Page 779.

Upon a careful review of the evidence submitted in this case we cannot escape the conclusion that the various legal steps, contested hearings and litigation in which the petitioner appeared, did not involve or in anywise directly concern the corporate rights and functions of Saxon School District, but were solely for the benefit of the individuals, Easler, Holmes and Trammell, composing the board of trustees, in their effort to succeed themselves in the office of school trustee.

A school district in its corporate capacity has no interest in the success of any individual or group of candidates who may run for the office of school trustee. There is no authority in this State, statutory or otherwise, which empowers school trustees to issue warrants covering fees of counsel for candidates engaged in a legal contest for the office of school trustee. It is not the duty of the public to pay for such services; such is not a school district purpose, and the taxpayers of a school district cannot legally be called upon to meet the expenses of such contests growing out of school district elections. The case would be no whit different in principle if the trustees had issued a warrant for the payment of counsel fees of the three defeated candidates who ran in the same election for the office of school trustee. We are, therefor, constrained to hold that Messrs. Easler, Holmes and Trammell were acting in their own individual behalf when they undertook to engage counsel to represent them and take part in all of the litigation to which we have referred. The warrant issued by them and drawn on Saxon School District was clearly *ultra vires* and unauthorized by law.

Furthermore, under the law, in our opinion, a county superintendent of education has more than a ministerial duty to perform when he approves a school warrant. The law provides that "any and all school warrants issued by any board of school trustees against any public school fund shall not be paid by the county treasurer or other officer having the custody of such fund until the warrant has been approved by the county superintendent of education of the county in which said warrant is drawn." Section 5382, 1932 Code.

It will be borne in mind that the question before us is entirely different from the issue passed upon in *Walpole v. Wall,* 153 S. C., 106, 149 S. E., 760, and in *State ex rel. Marshall v. Starling,* 13 S. C., 262. In those two cases it was held that in the approval of a salary fixed by law there is no discretion to be exercised, but the salary must be paid when there is money in the treasury subject to the payment of such claim, and not actually appropriated to the payment of other claims.

In the case of *State ex rel. Williams v. Hiers,* 51 S. C., 388, 29 S. E., 89, an application was made to this Court in its original jurisdiction for a writ of mandamus commanding Hiers, the superintendent of education for Colleton County, to approve a claim covering the purchase of certain desks. The county superintendent had refused to approve the warrant although at the time the claim was first presented to him there were funds sufficient to pay the same to the credit of the school district in the county treasurer's office. This Court denied the application for a writ of mandamus upon two grounds: Because the power conferred upon the respondent (Hiers) to approve the claim gave him the right to exercise his discretion in the premises, and where an officer is clothed with discretionary powers mandamus is not the proper remedy. The other ground upon which denial of the writ was based was that it was not made to appear that there were in the hands of

the county treasurer funds applicable to this claim sufficient in amount to pay the same.

The writ applied for in the instant case would have to be denied upon the same grounds announced by the Court in *State ex rel. Williams v. Hiers, supra.*

■ Undoubtedly, the power to approve a claim as the one before us carries with it the discretion to disapprove. It is universally held that in all matters requiring the exercise of official judgment, or resting on the sound discretion of a person to whom a duty is confided by law, mandamus will not lie to control the exercise of that discretion. See *Gardner v. Blackwell*, 167 S. C., 313, 166 S. E., 388, and the many cases cited therein.

In support of the proposition that mandamus will be refused if it appears that there are no funds available to pay the claim, see *State v. Daniel*, 52 S. C., 201, 29 S. E., 633; *McCaslan v. Major*, 64 S. C., 188, 41 S. E., 893, 894. In the last case cited the Court said: "It will thus be seen that there were no funds in the hands of the country treasurer legally applicable to petitioner's claim at the time these proceedings were commenced or at the time of filing the special referee's report. It is well settled by the decisions of this court that under such circumstances the petitioner is not entitled to the writ."

To the same effect is *State ex rel. Fooshe v. Burley*, 80 S. C., 127, 61 S. E., 255, 16 L. R. A. (N. S.), 266.

■ It will be recalled that the warrant was issued to the petitioner on July 5, 1939. This action was not commenced until June, 1940, at which time there were no funds in the hands of the county treasurer legally applicable to the payment of the claim. It would be a useless and futile thing now to issue the writ prayed for, even if the circumstances warranted it as a matter of law, because there are no funds, as shown by the evidence, in the hands of the county treasurer of Spartanburg County with which to meet the payment of this claim.

Judgment reversed.

MR. CHIEF JUSTICE BONHAM,. MESSRS. ASSOCIATE JUS-
TICES BAKER and STUKES and MR. ACTING ASSOCIATE JUS-
TICE G. DUNCAN BELLINGER concur.