1265

ANDERSON COUNTY SCHOOL DISTRICT 1, Appellant v. ANDERSON COUNTY BOARD OF EDUCATION; Fred G. Dobbins, G. Hugh Durham, E. J. Wright, Jr., William R. Clary, Jr., Curtis W. Pennington, G. Mell Gerrard, J. M. Wingo, in their Official Capacities as Members of the Anderson County Board of Education; and Millard G. Smith, Executive Secretary of the Anderson County Board of Education, Respondents.

(371 S. E. (2d) 807)

Court of Appeals

*Kenneth L. Childs, David T. Duff* of *Childs, Duff & Hardin,* Columbia, and *H. Grady Kirven* of *Watkins, Vandiver, Kirven, Gable & Gray,* Anderson, *for appellant.*

*Robert L. Waldrep, Jr., Harold R. Lowery* and *Richard E. Thompson* of *Lowery, Hood & Thompson,* Anderson, *for respondents.*

Heard April 20, 1988.

Decided Aug. 1, 1988.

CURETON, Judge:

Anderson County School District 1 sought a writ of mandamus to require the Anderson County Board of Education to approve and sign school warrants necessary to disburse school building fund monies from the office of the Treasurer of Anderson County. The County Board of Education refused to execute the warrants claiming it had discretion to withhold approval. The matter was referred to the Master-In-Equity for Anderson County with provision for direct appeal to the Supreme Court. The Master denied the petition for the writ concluding the County Board of Education had full discretion and authority to deny the disbursements under Sections 59-21-310 *et seq.* or Sections 59-69-210 *et seq.* of the 1976 Code. We reverse the decision of the Master and remand for proceedings not inconsistent with this opinion.

## I.

The School District applied for capital improvement funds to construct a school in the District under the provisions of *S. C. Code Ann.* Sections 59-21-310 to 450 (1976 and Cum. Supp. 1987). The State Board of Education approved the application. Funds were remitted to the Treasurer of Anderson County under Section 59-21-380. The School District incurred expenses for various contracts relative to the planned school facility. The School District sought disbursal of the funds from the Treasurer to pay the expenses. The County Board of Education refused to countersign the warrants for the funds and, therefore, the Treasurer did not disburse the money. This litigation ensued.

## II.

The School District seeks a writ of mandamus from the court requiring the County Board of Education to execute school warrants. South Carolina recognizes the writ of mandamus as the highest judicial writ known to law. To obtain a writ of mandamus requiring the performance of an act an applicant must show: (1) a duty of the respondent to perform the act; (2) the ministerial nature of the act; (3) the applicant's specific legal right for which the discharge of the duty is necessary; and (4) the lack of any other legal remedy. *Wiblen v. Long,* 262 S. C. 430, 205 S. E. (2d) 174 (1974); *Willimon v. City of Greenville,* 243 S. C. 82, 132 S. E. (2d) 169 (1963).

The parties assert the critical question is whether the County Board of Education has discretion to approve or disapprove school warrants allowing disbursements for school capital improvements. There is no dispute the funds are available in the county treasurer's office. Also, the parties have not argued the School District has another adequate remedy at law. The resolution of this controversy involves the construction of various statutes concerning the application and disbursement process for school capital improvement funds.

### III.

The General Assembly has outlined an application procedure for school capital improvement funds in Title 59, Chapter 21, Article 3 of the 1976 Code. This state aid is allocated each year to school districts based upon a pupil allocation formula. It is designed to assist school districts in the financing of needed capital improvements. In order to obtain the funds, a school district is required to make application to the State Board of Education. *S. C. Code Ann.* Section 59-21-370 (1976). Under Section 59-21-360 the county board of education is required to submit a survey to the State Board of Education providing information on such topics as existing facilities, desirable consolidations, new construction, and new facilities necessary for the public schools of the county. This information is designed to assist the State Board in making decisions on applications by school districts for the funds. *S. C. Code Ann.* Section 59-21-360. Once the State Board approves an application by a school district the funds are remitted periodically as required to the treasurer of the county in which the district is located. The treasurer places the funds in a specially identified account. The treasurer then disburses the building funds "only on school warrants properly drawn by the authorities of the school district. . . ." *See S. C. Code Ann.* Section 59-21-380 (1976) (outline of procedure for remittance and disbursement of funds).

In interpreting the code sections, it is instructive to consider the evolution of the statutes as they have been amended by the General Assembly. In the 1962 Code, the provisions for capital improvements were contained in Title 21, Chapter 10, Article 2. Under Sections 21-279 and 21-280

of the 1962 Code, a school district could apply for the funds but the application had to be submitted to the county board of education for approval before the request was forwarded to the State Board. If the county board disapproved the application, the school district could appeal to the State Board under Section 21-281.

The county board of education is not required under the current statutory scheme to pre-approve the application of the school district. The intermediate step of submission of the application to the county board has been eliminated by the General Assembly. We are mindful of the language in Section 59-21-360 that the State Board may, in its discretion, deny all applications for funds from any county until such time as the county plan has been submitted by the county board of education and the further language indicating "all applications from school districts or operating units shall conform to the plan of the county board of education." Neither party focuses directly on this language and the record does not indicate whether the Anderson County Board of Education submitted the county plan, and if the request by the School District complied with the county plan.

The County Board of Education alleged as a defense ■ in its answer that the application of the School District was improper because it was submitted in the face of the County Board's rejection of the School District's request to approve a bond issue to finance construction of the school in question. The trial judge refused to hold the School District's application improper, *but assumed the application was proper. No one excepted to this finding. Thus, any argument relative to the impropriety of the School District's application to the State Board is simply inappropriate in this appeal.* Parenthetically, we note that the affidavit of the Director of the Office of School Planning and Building of the South Carolina Department of Education states the School District's application met all requirements of the State Board of Education. In any event, the State Board approved the application for the building funds by the School District and the action of the State Board is not challenged in this appeal as improper. As far as the application process is concerned, the County Board of Education is not a necessary assenting party.

## IV.

Since there is no provision for pre-approval of the application for building funds by the County Board of Education, the next area of inquiry concerns the disbursement process from the office of the county treasurer. Under Section 59-21-380 the treasurer will pay out the building funds only on school warrants which are properly drawn by the authorities of the school district. The parties have focused upon the procedures outlined in S. C. Code Ann. Sections 59-69-215 and 220 (1976 and Cum. Supp. 1987). The Master concluded as a matter of law that Sections 59-21-380, 59-69-215, and 59-69-220 grant authority to the County Board of Education to approve the disbursement of funds by properly executed warrants and there was no exemption or limitation which allowed the School District to receive the building funds without the approval of the County Board of Education.

Section 59-69-215 became effective July 1, 1983. It does not specifically repeal Section 59-69-220. When the code sections relating to financing of school facilities discussed in Part III of this opinion were originally enacted, the warrant procedure was contained in current Section 59-69-220. Under that section a warrant issued by the board of school trustees had to be approved by the county superintendent of education before the treasurer of the county paid the warrant. The office of county superintendent of education in Anderson County was abolished in 1982. 1982 S. C. Acts 3420, 3422. All the powers and duties of the county superintendent were devolved upon the County Board of Education. General supervision of all phases of the public education program in Anderson County was given to the County Board of Education except as was otherwise vested in the boards of trustees of local school districts. Other legislation provided the school districts in Anderson County were to be managed and controlled by boards of trustees. 1982 S. C. Acts 3415.

Since the County Board of Education in Anderson County assumed the responsibilities of the county superintendent, the focus of the inquiry under Section 59-69-220 is the role of the county superintendent in the warrant process. The County Board of Education has the same authority under this section as previously held by the county superintendent.

Several cases have considered the authority of the county superintendent in the school warrant process. A teacher sought a writ of mandamus to compel a county superintendent to execute a warrant for her salary in *Walpole v. Wall,* 153 S. C. 106, 149 S. E. 760 (1929). Our Supreme Court held the writ should be issued. The Court determined the superintendent did not have discretionary power to refuse to execute the warrant if the district had funds in the treasury to pay the warrant. The superintendent had no function in the employment of teachers or the fixing of their salaries and the teacher in question had a contract of employment. A similar result was reached in *Pressley v. Nunnery,* 169 S. C. 509, 169 S. E. 413 (1933). The contract of the teacher was valid and binding and the trustees of the district had approved the warrant. As in the *Walpole* case, the Supreme Court held the county superintendent had no discretionary authority to refuse to approve the warrant.

A different result was reached in *Paslay v. Brooks,* 198 S. C. 345, 17 S. E. (2d) 865 (1941). School trustees had executed a warrant for payment of legal fees. The county school superintendent refused to approve the warrant. The Supreme Court held mandamus was not appropriate because the superintendent had discretionary authority to disapprove the warrant. Significantly, the Court noted the warrant was unauthorized by law and ultra vires because the legal fees were incurred by the school trustees in their individual capacities with respect to their election. The Court distinguished the *Walpole* case on the basis the superintendent in *Walpole* had no discretion to disapprove a salary fixed by law.

In reconciling these cases, it appears a county superintendent would have authority to disapprove a warrant issued by school trustees which was unauthorized by law and ultra vires. However, if the school trustees act within the scope of their authority in approving a contract (such as a contract of teacher employment), the superintendent does not have discretion to refuse to execute the school warrant if funds to pay the warrant are available.

Turning to the facts of this case, the statutory scheme outlined by the legislature for obtaining school building funds places the power to award contracts for

construction in the hands of the school districts. *S. C. Code Ann.* Section 59-21-410 (1976). This power is consistent with the general obligation imposed by the legislature on school district trustees to provide suitable school buildings in their district. *S. C. Code Ann.* Section 59-19-90(1) (1976). This power is also consistent with the current statutory scheme of application for school building funds from the state. This scheme places the application process in the hands of the school district.

The Master reasoned the County Board had discretion in determining whether to approve the School District's warrant for payment because the County Board of Education "has a duty in the control of the budget, bond approval and taxing authority to require fiscal responsibility in expenditures of public monies to be made by the [District Board] on an uncertain project which may or may not be approved or completed; the County Board has the duty to exercise discretion." We recognize that Act No. 510 of 1982 vests the County Board with the power to review and approve the budgets of the school districts and approve requests for increases and decreases in taxation. 1982 *S. C. Acts* 3420, 3423. Nevertheless, the record does not reflect that the County Board disapproved the District's budget for the year in question. Moreover, although the County Board claims that the construction of the questioned school in the District will result in a tax increase which it has authority to disapprove, the record does not reflect as a matter of law that the construction of the school will result in a tax increase. We also note that the District Board members are elected by the residents of the District and must answer to their constituents for any fiscal irresponsibility. Moreover, Section 59-71-40 of the Code of Laws of South Carolina, 1976, requires the voters of the District to approve bond issues. When this matter is considered in that light, the Master's concern that the School District's actions border on irresponsibility is seriously diminished.

We are also unpersuaded by the dissent's argument that our decision derails the laudable goals of the South Carolina Educational Improvement Act of 1984. Clearly, our decision furthers the goals of the EIA. Contrary to the dissent's argument, to permit a county school board to veto the re-

ceipt of funds to a district after the State Board has fully considered the district's application would emasculate the authority of the State Board in whom the General Assembly has placed sole responsibility for awarding capital improvement grants. We especially note that even under the old provisions of Section 21-281 of the 1962 Code, the State Board, could award funds to the district over the objection of the County Board.[1]

Since the school district trustees have the sole authority to apply for capital improvement funds and award contracts for school construction, this case is analogous to the teacher salary cases of *Walpole* and *Pressley*. The County Board of Education, standing in the shoes formerly occupied by the county superintendent, does not have discretion under Section 59-69-220 to disapprove the warrant if funds are available in the treasurer's office.

Attention has also been drawn to Section 59-69-215 and the procedure outlined in it for disbursal of funds. Both parties seem to argue this section is also applicable to disbursement of building funds forwarded to the county treasurer by the State. As previously stated, Section 59-69-215 does not expressly repeal Section 59-69-220. The language of Section 59-69-215 does not give any authority or responsibility for approval of disbursement of funds to the county board of education or the county superintendent. Rather, the section outlines a disbursement procedure in which the governing body of the school district requests disbursement of the funds as they become available and the governing body of the county concurs. Section 59-69-215 identifies the funds covered by its provisions as funds "available for use in the operation of the school district." It is not clear to us that funds available for use in the operation of a school district include funds received from the state specifically earmarked for capital improvements. In fact, use of approved capital improvement funds by a school district for general operation purposes would violate the school facilities provisions in the *S. C. Code Ann.* Sections

---

[1] As best we can determine, the County Board made its views known to the State Board before any monies were forwarded to the County treasurer for the school district.

59-21-310 through 450 (1976 and Cum. Supp. 1987). Additionally, because Section 59-69-215 was enacted as part of Act No. 417, 1982 *S. C. Acts* 2468, which also amended Section 59-21-130 contained in Article I of Chapter 21 dealing with "Teachers' Salaries and Overhead," we assume the Legislature intended that Section 59-69-215 would relate to and further the procedures for disbursement of funds established in Article I as opposed to Article III.

■ Since the applicability of Section 59-69-215 to the disbursement of capital improvement funds is questionable, the school warrant procedure outlined in Section 59-69-220 is the relevant procedure. As previously discussed, the Anderson County Board of Education does not have discretionary authority under the facts of this case to disapprove the disbursal of capital improvement funds remitted by the State to the Treasurer of Anderson County.

Accordingly, the decision of the Master is reversed and the case is remanded for proceedings not inconsistent with this opinion.

GOOLSBY, J., concurs.

GARDNER, J., dissents in separate opinion.

GARDNER, Judge (dissenting):

I dissent because (1) the trial judge found that there was evidence before him that the state funds sought to be disbursed were obtained by an untruth and no exception was taken to this finding; (2) the bills sought to be paid by the warrants, the payment of which is here litigated, were for preconstruction costs of the Powdersville School District, which the Board of Trustees knew was not going to be constructed because the necessary bond issue to the construction of the building had been disapproved by the Anderson County Board of Education and therefore the payment of these bills would be tantamount to throwing away money; (3) the controlling statutory scheme provides for accountability of the Anderson County Boards of Trustees to the Anderson County Board of Education and, in my opinion, requires the exercise of discretion by the Anderson County Board of Education in countersigning warrants directing the payment of funds obtained from the state and

other school funds; and (4) the majority decision might well result in the mismanagement of huge sums of money without any accountability and perniciously affect the laudable goals of the South Carolina Educational Improvement Act of 1984 and the use of other state and local tax funds which originate from the taxing of the citizens of this state.

The well-reasoned appealed order contained, *inter alia,* the following:

> Both applications [to the State Department of Education] as prepared by the School District One included as other funds previously approved the sum of Five Million Ten Thousand Four Hundred Twenty Seven and No/100 ($5,010,427.00) Dollars which is a sum that includes an *unapproved* bond request for Three Million One Hundred Eighty Five Thousand and No/100 ($3,185,000.00) Dollars. The defendant submitted evidence that on September 15, 1986, prior to the application "B," the County Board *had denied the plaintiff's request to approve a bond issue on the grounds that the financial resources of the plaintiff were not sufficient to build the Powdersville School and continue to properly operate existing schools in School District One.* [Emphasis mine.]

Despite the fact that the Board of Trustees knew that the bond issue to construct the school building at Powdersville would not be forthcoming, it incurred pre-construction costs for the Powdersville School and here seeks to force the Anderson County Board of Education, which has by statute general supervisory authority over the building of schools in Anderson County, to pay pre-construction architect and consulting fees and land clearing costs for a building which will not be erected.

A statutory scheme providing for checks and balances and accountability is in place for Anderson County and involves both general statutory law and recently enacted state statutes pertaining to only Anderson County.

The 1982 S. C. Acts 3420 *et seq.* in pertinent part provides:

> Section 1. Notwithstanding any provision of law, the Anderson County public school system shall be *governed* by the county board of education. . . .
>
> \* \* \* \* \* \*

Section 4. Notwithstanding any other provision of law, the county board shall *have general supervision* of all phases of the public school program in Anderson County except as may be otherwise vested in boards of trustees in the local school districts.

\* \* \* \* \* \*

All powers and duties of the County Superintendent of Education are devolved upon the board and that office is abolished. [Emphasis mine.]

In summary, 1982 S. C. Acts 3420 *et seq.* vested in the Anderson County Board of Education the right to *govern* the Anderson County school system and general *supervision over all phases of the school system except as otherwise provided by law;* the Act also abolished the office of the Anderson County Superintendent of Education and devolved its duties and responsibilities on the Anderson County Board of Education.

At this point, certain duties of the Anderson County Superintendent of Education which were devolved upon the Anderson County Board of Education are necessary to an understanding of this case.

Sections 59-13-60 *et seq.*, Code of Laws of South Carolina (1976) set forth certain duties of county superintendents of education. In addition Sections 59-69-215, Code of Laws of South Carolina (Supp. 1987) and 59-69-220, Code of Laws of South Carolina (1976) are pertinent to this dissent since these two statutes apply to state funds received by the various local school districts.

Section 59-69-215 provides as follows: Notwithstanding the provision of this article, the treasurer of any county shall disburse to any school district within his county any funds which he may have on hand available for use in the operation of the school district; *provided the governing body of the school district requests disbursement to the school district funds as they become available.* . . . [Emphasis mine.]

Section 59-69-220, entitled "Approval of Warrants by County Superintendent of Education or his Agent," in pertinent part provides:

No school warrants issued by any board of school trustees against any public school fund shall be paid by the county treasurer or other officer having the custody of such funds until the warrant has *been approved by the county superintendent of education of the county in which such warrant is drawn.* ... [Emphasis mine].

Section 59-13-80, Code of Laws of South Carolina (1976) provides that the county superintendent of education must keep an annual register of all claims *approved by him.* Section 59-13-90, Code of Laws of South Carolina (1976) requires the county superintendent of education to report annually to the county treasurer *all claims approved by him.*

With reference to state grants, Section 59-21-380, Code of Laws of South Carolina (1976) provides, *inter alia,* that state funds for capital improvements are to be expended in the same manner as *provided by law for the expenditure of other school funds;* thus the disbursement of state funds must be approved by the Anderson County Board of Education, which by law is charged with the duty to govern and supervise all phases of the Anderson County School District; and further the disbursement of capital improvement funds is subject to this responsibility of the Board of Education of Anderson County just as are other school funds.

As the majority opinion concedes, and I have emphasized, under Section 59-69-220, a warrant issued by the board of school trustees, i.e., the school district, must be *approved* by the county superintendent of education before the county treasurer pays it. (And, it is to be remembered that in Anderson County, the Superintendent of Education office has been abolished and its duties devolved by statute upon the County Board of Education.) The majority opinion, however, goes on to suggest the county superintendent's approval is only a ministerial act intended only to assure that the funds are available and monitor their flow through the treasury. I disagree with this interpretation. As the majority correctly observes, Section 59-69-215 did not repeal Section 59-69-220. Neither statute relegates the county board of education to perfunctory duties; rather, the two statutes, when read together, *compel the conclusion* that county boards of education, as *governing* bodies of their respective

school districts, have a responsible role in the warrant process.

The majority also observes that under the present statutory scheme the county board is no longer a necessary assenting party when a school district applies for state funds. I believe this circumstance reinforces my thinking that the Anderson County Board of Education had the discretion to refuse to sign the claim forms. Because county boards of education no longer participate in applying for school funds, their only means of control in *answering to the public* is their ability to approve or disapprove the final disbursements.

In my view, the duties to *govern, supervise* and *approve* expenditures of all county and state funds for educational purposes involve the exercise of discretion on the part of the Anderson County Board of Education and I would hold that our Supreme Court had explicitly held the same thing. I review the pertinent authorities. In *Paslay v. Brooks*, 198 S. C. 345, 17 S. E. (2d) 865 (1941) the Supreme Court had before it an appeal from a circuit court affirming a master who had issued a writ of mandamus upon finding the duty of a county superintendent in acting upon a school warrant issued by the school district board of trustees was merely ministerial. The warrants were to pay for attorney fees in various legal proceedings on behalf of the district. There, our Supreme Court reversed the appealed order, holding that under the predecessor statute to Section 59-69-220:

> [I]n our opinion a County Superintendent of Education has more than a ministerial duty to perform when he approves a school warrant.

> \* \* \* \* \* \*

> Undoubtedly, the power to approve a claim such as the one before us carries with it the discretion to disapprove. It is universally held that in all matters requiring the exercise of official judgment or resting on the sound discretion of a person to whom a duty is confided by law, mandamus will not lie to control the exercise of that discretion. [Citations omitted].

198 S. C. 353-354, 17 S. E. (2d) at 868-869.

In *Paslay* the court distinguished two earlier cases, *Walpole v. Wall*, 153 S. C. 106, 149 S. E. (2d) 760 (1929) and *State ex rel. Marshall v. Starling*, 13 S. C. 262 (1880), in which it was held that in the approval of a salary fixed by law, there is no discretion to be exercised, but the salary must be paid when there is money in the treasury subject to the payment of the claim. What the Supreme Court, in these two earlier cases, held is simply that the salaries had already been set by state law and the funds appropriated, and, therefore, the only function remaining was the ministerial act of approving the warrants. The court in the later case of *Paslay* clearly distinguished the two situations and the differentiation by the court speaks for itself. The attempt by the majority opinion to equate the spending of school funds for the pre-construction costs of a school building which will not be erected with the payment of a salary for a school teacher which had been set by state law and for which funds had already been appropriated is in my mind patently untenable.

*Paslay*, because of its explicit holding that the approval of warrants by a county superintendent of education is more than a ministerial duty, is apt precedent, in my opinion, for the present controversy.

I would affirm the well-reasoned order of the Master-In-Equity for Anderson County; his review of the facts and explanation of the law, in my opinion, are superb.